THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALAN DONALD, Defendant-Appellant.

First District (4th Division)   No. 62794

Opinion filed December 29, 1977.

James Geis and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and Leonard J. Wojtecki, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The defendant, Alan Donald, was tried before a jury for murder, was convicted, and sentenced to 20 to 40 years in the penitentiary. Defendant seeks a new trial because of the following alleged trial errors: (1) the prosecution was improperly permitted to introduce evidence of statements made by the defendant which they had concealed before trial despite discovery requests for any such statements; (2) the defense was restricted in their cross-examination of a State witness concerning his visual identification of the type of gun allegedly used by the defendant; (3) the defense was prevented from adducing a prior inconsistent statement of that same witness; (4) the prosecution's rebuttal evidence was improper as rebuttal because it was collateral to all material issues and served no proper evidentiary purpose; (5) the prosecution's remarks during voir dire and closing argument were unfairly prejudicial and inflammatory. The defendant also contends that his sentence is excessive.

We affirm the judgment and sentence of the trial court.

Ulysses Scott was the State's key eyewitness to the shooting. He lived in the same apartment building as the defendant and the victim, Ricardo Wise. Scott had known the defendant for three to four years, and Wise about two years. On the day of the shooting, at about 2:30 in the afternoon, Scott was sitting with Wise in a car parked in the parking lot of their apartment building. They had spent the past night and that morning in the car, talking and drinking, though Scott testified that on that day he only drank one can of beer and two swallows of wine. At about 2:30 p.m. Scott saw the defendant sitting on a parked car about 20 or 25 feet away. The defendant called to Wise to come over. Wise walked over to the defendant. They stood together for several minutes, then Wise made what Scott interpreted as a motion of dismissal, and began walking away. Defendant pulled out a blue steel .38 pistol from his left side, pointed it at Wise and fired. He continued to fire as Wise fell, firing a total of four shots. Defendant put the gun back in his side, and began to walk and finally ran into his apartment building. At that time he was wearing a green cap, a green shirt with a maroon shirt underneath, and blue jeans.

Albert Brown, a cab driver, also testified for the State. On the day of the shooting at about 2:30 p.m. he was driving by that same apartment building when he heard a shot. He kept on driving, at about 15 to 20 miles per hour, but he looked to his right. He saw a man lying on the ground and another man standing over him with a gun. Brown heard two or three more shots, then the man with the gun put it under his jacket and walked to the building. Brown described the man as a Negro in his early twenties, five feet seven inches tall, weighing 135 to 140 pounds. He was wearing a green jacket, a green cap, and blue jeans; the gun was blue steel in color. Brown could not identify the man he saw. He had been about 100 feet away from the shooting.

Officer Tom Blackwell arrested the defendant. At the police station he asked the defendant a number of questions pertaining to personal data such as his height and weight. Over defense objection, Blackwell testified that in response to these questions defendant stated that he was five feet, seven inches tall, weighed 144 pounds, and was 19 years old.

After a pathologist testified that he recovered two bullets from the victim's body, a police firearms expert identified those bullets as being .38-caliber bullets.

The only witnesses for the defense were the defendant and his mother, Edna Walker. Edna Walker testified that between noon and 1 p.m. on the day of the shooting, she sent the defendant to buy some groceries and they then had lunch. After lunch, in the early afternoon, he left. He was wearing green pants and a blue shirt that day, and was not wearing a hat. Later that afternoon, between 4 and 5, three police officers came to her house and questioned her for half an hour. While they were there other officers with shotguns arrived, kicking open the door to gain entrance. The police asked where the defendant was and one of them gave Mrs. Walker a card with the number of the Grand Crossing police station on it, and then left. At 7 p.m. the defendant arrived. Mrs. Walker told him about the shooting of Wise and asked if he had done it. Defendant denied having shot Wise and asked her to call the police. She did so, using the number on the card given to her by the police. Defendant spoke to the police by phone and shortly thereafter four policemen arrived and took the defendant, accompanied by his mother, to the station.

The defendant testified that after having lunch with his mother at home that day he left the apartment at about 1 p.m. and went to the beach, where he spent the afternoon. He did not see anyone that he knew there. When it started to get dark he walked home, taking about an hour to do so. At home his mother told him that Wise had been shot and that police officers had been at the apartment looking for the defendant. She then called the police and defendant spoke to them. He told them that he had heard they wished to speak to him, and he asked them to come to his house and get him. Defendant denied having a gun that day and denied shooting Wise. When he was arrested he was still wearing the clothes in which he had begun the day, a blue shirt and green pants.

On cross-examination defendant stated that he did know Wise, although he indicated that he did not know him that well. He denied telling the police that he did not know Wise, stating that he told them he had "seen him." Defendant stated that he was 20 years old, five feet, seven inches tall, and weighed 154 to 157 pounds, the same weight as on the day of the shooting.

The State offered the testimony of three witnesses in rebuttal. Investigator Dennis Banahan, over defense objection, testified that defendant volunteered that he did not even know "that dude,"

apparently a reference to Wise. Investigator Robert Lewis testified that at about 5 p.m. on the day of the shooting he and two other officers talked to defendant's mother at her apartment. No other officers came while they were there. None of them carried shotguns and they did not kick in the door, rather, Mrs. Walker let them in when they knocked. Mrs. Walker was given a card containing two phone numbers for their office at Area 2, Homicide. Investigator Edward Czekala then testified that on that day from 5 p.m. to 8 p.m. he was at the Area 2 Homicide offices. He was assigned to the Wise shooting, so that if either the defendant or his mother had called, he would have been notified. During that time he did not receive such a phone call nor was he informed of any such call.

## I.

Defendant contends that the trial court erred in allowing testimony concerning two statements made by him. On direct examination by the State, during its case-in-chief, a police officer testified that after being arrested and taken to the police station, defendant was asked about personal data relating to his height, weight and age. At that time defendant stated he was 19 years old, weighed 144 pounds, and was 5 feet, 7 inches tall. This, of course, tended to corroborate Albert Brown's description of the assailant as being 5 feet, 7 inches tall, in his early twenties, weighing about 135 to 145 pounds.

Then a State rebuttal witness, a police investigator, testified that during questioning the defendant volunteered that as to the victim: "I didn't much know [sic] about this thing. I didn't even know that dude." On cross-examination defendant had denied telling the police that he did not know Ricky Wise; he recalled telling them that he had seen him but had never dealt with him.

At trial the basis of defendant's objections to the introduction of these statements was the State's failure to reveal their existence prior to trial in response to defendant's discovery motion for any statements made by the defendant. Supreme Court Rule 412(a)(ii) provides in pertinent part that:

"(a) * * * the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

(ii) any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgment of such statements." Ill. Rev. Stat. 1973, ch. 110A, par. 412.

In response to defendant's written motion for this information the State wrote "No statements by defendant." Just prior to voir dire defense counsel informed the court that she was relying on the State's answer that

there were no statements by the defendant, either oral or written. The court asked the State's Attorney if this was correct. He replied: "That is not correct, Judge. I believe the Supreme Court rules talk about statements to law enforcement officers and there are no statements." At that time, following argument, the court granted defendant's motion to exclude a statement by defendant to a civilian, which the State indicated it would seek to introduce at trial. No mention was made of any intent to introduce the statements to police officers which were in fact subsequently introduced by the State over defendant's objections.

■■ Defendant argues that because the State failed to comply with the requirements of Rule 412, they should not have been permitted to introduce the two statements at issue. However, our review of the record establishes that there was in fact substantial compliance with the rule. In argument on defendant's objection to testimony concerning defendant's personal data statement, the court stated: "The height, weight and age are all in the report as to what he stated, which was given to the defendant." Again, during argument on defendant's objection to introduction of testimony concerning the second statement, the State's Attorney responded that the statement was in a police report which defendant had obtained through discovery, so that defendant knew of the statement. These statements were not contradicted by defendant at trial, nor have they been contradicted on appeal. Defendant has not chosen to make the police reports part of the record on appeal. We therefore conclude that defendant was furnished with the substance of these statements through his discovery of the applicable police reports. See *People v. Woods* (1974), 19 Ill. App. 3d 774, 312 N.E.2d 647 (abstract), where it was held that defendant's failure to contradict the trial court's statement that discovery was complied with established that compliance.

The drafter's purpose of Rule 412 is to prevent surprise and unfairness to the accused. (*People v. Clinton* (1976), 43 Ill. App. 3d 62, 356 N.E.2d 1119.) Where defendants have in fact had access to statements they sought prior to trial it has been held that there was sufficient compliance with Rule 412, even though the State had also denied any knowledge of such statements. (*People v. Simms* (1976), 38 Ill.App. 3d 703, 348 N.E.2d 478, *cert. denied* (1977), 429 U.S. 1106, 51 L. Ed. 2d 558, 97 S. Ct. 1138; *People v. Sanders* (1974), 56 Ill. 2d 241, 306 N.E.2d 865, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3178.) Thus in *Simms* the State, in response to defendant's discovery motion, denied knowledge of any statements by defendant. Subsequently a police officer testified at trial concerning an incriminating statement by the defendant. The appellate court held that there was no showing of surprise or prejudice to defendant because his counsel admitted that he had been given a copy of the statement prior to trial.

We do not condone the State's method of compliance with discovery. Certainly the plain language of Rule 412 contradicts the State's Attorney's restriction of the rule to statements to police officers. Furthermore, the statements at issue were in fact made to police officers, so as to come within even that overly narrow construction. But at the same time, where defendant was in fact apprised of the statements, we find no prejudice or surprise which would require reversal for failure to exclude the statements.

■■ ■ Defendant also asserts that the statements should have been excluded because their voluntariness was not established. Defendant's objections to these statements during trial were founded solely on the State's alleged failure to disclose them through discovery. Ordinarily no proof is required of the voluntariness of a statement where defendant fails to object to admission of the statement on that basis. (*People v. Blumenshine* (1969), 42 Ill. 2d 508, 250 N.E.2d 152.) Additionally, in his written motion for a new trial, defendant did not raise the issue of improper admission of the statement concerning personal data, thus waiving that issue for appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) We also note that this statement was in response to the sort of preliminary questions which are the ordinary part of the booking process; their admission into evidence has been upheld even where no *Miranda* warnings were given and no hearing on voluntariness was held. *People v. Fognini* (1970), 47 Ill. 2d 150, 265 N.E.2d 133; *cert. denied* (1971), 402 U.S. 911, 28 L. Ed. 2d 653, 91 S. Ct. 1389; *People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126.

■■ In his motion for a new trial defendant did assert as error the admission of his statement concerning his acquaintance with Ricky Wise, without a hearing on voluntariness. But the officer who testified concerning this statement stated that defendant volunteered the statement. Defendant did not choose to cross-examine the officer, nor did defendant in his testimony ever assert that statements were obtained from him against his will. The statement at issue was not a confession, it did not constitute an admission of guilt or even an admission of involvement in the shooting. It merely contradicted defendant's testimony about what he told the police concerning his familiarity with Wise. On the basis of these considerations we conclude that the trial court did not err in failing to *sua sponte* hold a hearing on the voluntariness of this statement. This case is distinguishable from *People v. Thigpen* (1966), 33 Ill. 2d 595, 213 N.E.2d 534, where a confession was at issue and the defendant's attorney had filed a motion to suppress in a companion case. There the court held that the trial court should have been aware that defendant's objections from the earlier case were meant to apply to the case at hand. Here defendant never filed a motion to suppress and never requested a hearing on the

voluntariness of the statement. The issue was first raised in his post-trial motion. Under these circumstances, given the collateral nature of this statement, the trial court did not err in refusing defendant's motion for a new trial on this ground.

## II.

■■ On direct examination Ulysses Scott testified, without any objection by defendant, that the gun defendant used to shoot Wise was a blue-steel .38. On cross-examination Scott was asked the basis of this conclusion. He was permitted to describe the differences between a .38-caliber revolver and revolvers of other calibers, but the court sustained objections to questions concerning whether he was familiar with guns and whether he had ever handled such guns or had contact with guns. Although on appeal defendant asserts that he was improperly restricted in his efforts to ascertain the bases for Scott's opinion, we note that at trial counsel for defendant indicated a different purpose in asking the questions to which the State successfully objected. Counsel stated that she was trying to establish, through Scott's familiarity with guns, that there was doubt about his testimony. She also stated in argument on the State's objections that these questions related to a prior conviction of the witness, although there is nothing in the record to substantiate this. On the basis of this record we conclude that the trial court did not err in limiting the cross-examination of the witness on this question. The limitation was well within the discretion of the trial court and did not constitute an abuse of that discretion. *People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771, *cert. denied* (1970), 396 U.S. 1016, 24 L. Ed. 2d 507, 90 S. Ct. 578.

## III.

■■ We do find, however, that the trial court erred in preventing defendant from adducing a prior inconsistent statement of Scott concerning his distance from the shooting. Scott testified at trial that he was 20 to 25 feet away from the defendant at the time of the shooting. However, in response to questioning by a police officer after the shooting, Scott stated that when the shooting happened he was four or five feet away from the defendant and Wise. Defendant sought to impeach Scott on the basis of this statement, which was contained in the preliminary hearing transcript. The trial court sustained the State's objection to this because Scott was rehabilitated by the explanation for this apparent contradiction, which Scott had offered after having been impeached at the preliminary hearing. Clearly it would have been proper for the State to bring out the rehabilitating part of the testimony after the witness was impeached. (*People v. Taylor* (1971), 132 Ill. App. 2d 473, 270 N.E.2d 628; *People v. Porterfield* (1971), 131 Ill. App. 2d 167, 268 N.E.2d 537.) But the

mere fact that a contradictory statement is subsequently explained, either contemporaneously or at a later time, does not prevent impeachment on the basis of the original statement. This would mean that only unexplained prior contradictory statements could be used for impeachment, a limitation clearly conflicting with *Taylor* and *Porterfield*.

■■ Although this limitation on defendant's cross-examination was error, we find no prejudice arising from the error. Scott testified that he knew the defendant and the victim prior to the shooting. His description of the clothing worn by the defendant was corroborated by the testimony of Albert Brown. His testimony that a .38-caliber weapon was used in the shooting was corroborated by expert testimony concerning the bullets with which the victim was shot. Under these circumstances, defendant's inability to bring out the prior inconsistent statement concerning the distance from which Scott viewed the shooting cannot be said to have resulted in manifest prejudice to the defendant, and therefore does not constitute reversible error. *People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286.

## IV.

■■ The defendant contends that he was prejudiced by the admission of the State's rebuttal evidence, which he asserts was collateral to every material issue and served no proper evidentiary purpose. Defendant did not object to this evidence at trial on these grounds, nor was this issue raised in his motion for a new trial. This failure to present these alleged grounds of error to the trial judge constitutes a waiver of the issue on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Furthermore, we note that the State's rebuttal evidence was generally material to important issues in the case. Investigator Banahan testified concerning the defendant's prior inconsistent statement that he did not know Ricardo Wise. The State has laid the foundation for this impeachment on their cross-examination of the defendant by a king him if he had ever told the police that he did not know Wise. It would have been improper for them not to follow up with this impeaching testimony. Certainly the question of the defendant's knowledge of his alleged victim is a material one in a murder trial; therefore evidence of defendant's denial of this knowledge was also material. The combined testimony of Investigators Lewis and Dzekala concerning the phone numbers on a card given to defendant's mother, and her apparent failure to call either of those numbers, served to rebut material defense evidence. Through the testimony of the defendant and his mother the defense attempted to establish that the defendant had cooperated fully in the police investigation, to the extent of voluntarily calling the police and

summoning them to his apartment. The State's rebuttal evidence tended to contradict this claim. Thus this evidence was utilized for the proper purpose allowed for rebuttal evidence, it tended to repel or disprove material evidence given by the defendant. (*People v. Daugherty* (1969), 43 Ill. 2d 251, 253 N.E.2d 389.) Investigator Lewis' contradiction of defendant's mother's testimony that police officers arrived carrying shotguns and kicked her door in, while in itself improper as rebuttal because it only went to a collateral issue in the case (*People v. McGhee* (1974), 20 Ill. App. 3d 915, 314 N.E.2d 313), cannot be said to have been reversible error. As we have noted defendant did not preserve this issue for appeal. Furthermore, defendant has not demonstrated in what manner this testimony could have prejudiced him, especially inasmuch as the issue was introduced by the defendant's evidence. In *McGhee* the State introduced in rebuttal, evidence which the appellate court found to be totally irrelevant to the defendant's guilt; additionally the appellate court found that this evidence was the basis for the trial court's finding of guilt. Here we have determined that most of the State's rebuttal evidence was material; as to that portion we have found to be immaterial, defendant has failed to establish any resulting prejudice.

## V.

■■ Defendant complains of a question asked by an attorney for the State on voir dire, as to whether the jurors had any preconceived notion of what a murderer looked like. Because defendant waived the reporter's taking of voir dire we cannot determine the context of this question or even the number of times it was asked. For this reason we find the alleged error to have been waived. (*People v. Turner* (1976), 35 Ill. App. 3d 550, 342 N.E.2d 158.) Furthermore, we do not find that allowing this question constituted an abuse by the trial judge of his clearly established discretion with regard to the scope and extent of voir dire examination. (*People v. Lobb* (1959), 17 Ill. 2d 287, 161 N.E.2d 325.) Nor do we find the reasonable possibility of any prejudice resulting from this question. The jury was aware that the defendant was on trial for murder, thus the question could not, as defendant argues, be said to suggest to the jury that defendant was a murderer. That accusation was, of course, the reason for the trial; the State had no need to disguise it as a question on voir dire. Moreover, the question served the legitimate purpose of discovering any bias or prejudice in the minds of the jurors. *People v. Carpenter* (1958), 13 Ill. 2d 470, 150 N.E.2d 100, *cert. denied* (1958), 358 U.S. 887, 3 L. Ed. 2d 15, 79 S. Ct. 128.

We have fully reviewed the record in the light of defendant's claims of prejudice arising from various comments of the State in final argument.

With one exception defendant did not object to those remarks at trial, nor did defendant include any of those alleged grounds of error in his written motion for new trial. As to those remarks never brought to the attention of the trial judge, defendant has waived any possible error. (*People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76; *People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630.) The one objection made by the defendant was sustained and this in itself served to cure any possible error. (*People v. Canale* (1972). 52 Ill. 2d 107, 285 N.E.2d 133.) Furthermore, all of the remarks now objected to by defendant were either proper responses to final argument by defense counsel (*People v. Carruthers* (1974), 18 Ill. App. 3d 255, 309 N.E.2d 659), or constituted permissible inferences drawn from the evidence. *People v. Taylor* (1974), 18 Ill. App. 3d 367, 309 N.E.2d 642.

■■ Finally, defendant contends that his sentence of 20 to 40 years in the penitentiary was excessive. The record reveals that in sentencing the defendant, the trial court considered the defendant's age, social history, and educational employment record. The court also noted that the shooting was a cold-blooded murder. The sentence of the trial court was within statutory limits and did not constitute an abuse of discretion, therefore, this court may not alter that sentence upon review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.