People of the State of Illinois, Plaintiff-Appellee, v. Gerald Magadanz (Impleaded), Defendant-Appellant.

Gen. No. 53,884.

First District, First Division.

June 15, 1970.

John L. White, of Chicago (Robert K. Kelty, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael Goldstein, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

Gerald Magadanz and Fred Zimmerman were jointly indicted for the offenses of robbery and burglary. After a trial before the court without a jury, each was found guilty as charged. Zimmerman was sentenced to the time served while awaiting trial and placed on probation for a period of two years. Magadanz was given concurrent sentences of one to three years in the Illinois State Penitentiary. He alone brings this appeal.

The complaining witness, Harry Mich, who was seventy-one years of age, testified that on February 1, 1967, at 5:30 p. m., a man whom he later identified as Fred Zimmerman, rang his back doorbell and asked him where Passin lived. Mich told him Passin lived on the third floor. After a few minutes Zimmerman returned and after telling Mich that Passin was not at home asked if he would keep a package for Passin. When Mich opened the door, Zimmerman threw down his package, pushed Mich back into his apartment and told him not to cry out or look at them, saying, "All we want is your coins, you won't get hurt." Mich testified that another man whom he later identified as Gerald Magadanz, entered the apartment behind Zimmerman. He said he had never seen either of them before. They pushed him into the bedroom and began to tie him face down on the bed until he told them he had a bad heart and would black out. Zimmerman then told him that he could lie face up, but not to talk or look at them; Mich told them where

his coin collection was and said he kept talking to them so that he could memorize their voices. During most of the time that they were in the apartment, they had scarves over their faces. The men were in the apartment for about twenty-five minutes before they took his coins and left.

Mich testified that each of the men was wearing a dark coat with a hood and a scarf. He said that he told the police that one of the men was 5', 9" tall and the other taller and heavier. However, Officer Einwiller said that Mich told him on February 1st that the two offenders were 5', 8" and weighed 170 pounds. Mich saw two photographs of Zimmerman at the police station a couple of days after the robbery. Several days after that, he was taken to the station where he identified Zimmerman, who was handcuffed to a chair in a room with many detectives. A few days later he again went to the station where he identified Magadanz, whom he saw in a room with men he said he assumed were detectives.

The complaining witness' son, Howard Mich, testified that he had worked with Zimmerman in a television repair shop for six months. He also knew Magadanz, who occasionally visited the shop. Howard Mich had seen the defendants talking together in the shop. On one occasion Zimmerman asked him about his father's coin collection while Magadanz and some other men were present. He had discussed his father's collection on several other occasions when Zimmerman was present, but he was not sure if Magadanz was also present. He also testified that he saw Zimmerman one-half block from the scene of the crime shortly after the occurrence. When Zimmerman was arrested, a slip of paper was found in his possession "with notations on it describing certain coins similar to those that were taken from Mr. Mich."

The defendant, Gerald Magadanz, denied any participation in the robbery. Fully supported by several wit-

337

nesses, he testified that he was plowing snow in front of his house on February 1, 1967, from 5:30 p. m. to 7:30 p. m.

■ ■ Because of our disposition of the case, it is only necessary to examine one of the defendant's contentions. It is our duty to carefully review the evidence, and if it is not sufficient to remove all reasonable doubt of the guilt of the defendant and to create an abiding conviction that he is guilty, the conviction will be reversed. People v. Kidd, 410 Ill 271, 102 NE2d 141. We do not believe the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. The identification of the defendant by the complaining witness was weak, vague and unconvincing. Most of his testimony was about the defendant Zimmerman, whom he apparently had a greater opportunity to observe. He gave the same description of the two defendants and their clothing, although the defendants differed substantially in size and age. No description of Magadanz's face was ever given. Mich testified that during most of the time the two men were in his apartment their faces were covered with scarves. He also said that he tried to memorize their voices from which we may reasonably infer that he could not see them very well. All in all, the identification of Magadanz was very weak.

■ ■ The manner of identification at the police station three weeks after the robbery by means of a "show-up" instead of a "lineup" was highly suggestive and improper under the circumstances. The proper method would have been a lineup of similar persons unknown to the witness and without suggestions. Since we find no independent origin for the identification of Magadanz in court by the complaining witness other than the suggestive and unnecessary confrontation at the police station, this evidence was inadmissible under People v.

338

Blumenshine, 42 Ill2d 508, 250 NE2d 152. There was no other evidence sufficient to convict Magadanz who had a strong alibi of the crimes charged. We therefore reverse his conviction.

Reversed.

MURPHY and ADESKO, JJ., concur.