THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT CALHOUN, Defendant-Appellant.

(No. 57279;

First District (3rd Division)—April 12, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Ian Levin and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane and Robin K. Auld, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

After a jury trial, defendant was found guilty of armed robbery and sentenced to a term of two to four years. Defendant's primary contention on appeal concerns the constitutional validity of the in-court identification of the defendant by the complaining witness. Defendant also contends before this court that the identification of the complaining witness was insufficient to prove him guilty beyond a reasonable doubt.

On September 5, 1970, at approximately 1:30 A.M., the complaining witness was awakened by sounds in her apartment. She turned on the light next to her bed and saw a man standing in the doorway to the bedroom with a board in his hand. The intruder stepped back into the hallway and ordered the complaining witness to turn off the light and put her money on the table next to the bed. The intruder entered the bedroom, took the money, and left the apartment with four or five dollars and a camera and camera case.

The complaining witness described the intruder as a Negro with a short natural haircut who was wearing a dark blue shirt with short

sleeves and light colored block letters across the front which the witness could not discern, dark pants, and dark shoes. Based on this general description, defendant was arrested about two blocks from the scene of the crime at approximately 7:00 A.M. on September 5, 1970. At the time of his arrest, defendant was wearing blue jeans and a short sleeved blue shirt with the word "MASTER" across the front in block letters. At the time of his arrest, defendant was searched but no physical evidence was found on his person.

At the hearing on the motions to suppress the pre-trial and in-court identifications, the complaining witness testified that she was called at about 7:30 that morning and told by the police that they had a suspect that they wanted her to identify. She went to the police station, told the desk officer who she was, and he reiterated that they had a suspect whom they wanted her to identify. While she was waiting to make the identification one of the police officers told her that a camera and camera case had been recovered from the defendant at the time of his arrest. During this time the complaining witness also spoke to a couple who stated that they had been burglarized and might have stated that they thought defendant was the perpetrator of that crime.

During the time that the complaining witness was waiting at the police station, defendant was brought, in the company of several police officers, to the area behind the front desk. Several other police officers surrounded the defendant and the complaining witness was called over to make the identification. At that time defendant was wearing the same clothes that he had been wearing at the time of his arrest. After looking at defendant for about one minute at a distance of approximately 30 feet, the complaining witness identified him as the intruder in her apartment. She also stated that she could identify defendant's voice from that distance when the police officer asked defendant to state his name. The complaining witness further testified at the hearing on the motion that she had identified defendant at the time of a preliminary hearing at Boys' Court four days after the defendant's arrest.

As to the crime, the complaining witness testified at the hearing on the motions that she was asleep in her bedroom with the lights out. She was sleeping facing west with her head against the east wall of the room. Next to her bed, also alongside the east wall, on a table was a lamp which she testified would light the entire room. When she was awakened by sounds in her apartment, she turned on the lamp and saw a male Negro standing in the doorway. The doorway also was located along the east wall of the room. When she turned on the lamp, the intruder stepped back into the hallway and closed the wooden door to the room. She had no further opportunity to see the intruder in the apartment. From

behind the door, the intruder told her he did not wish to harm her, but only wanted her money. He ordered her to put the money on the table alongside the bed and to keep the lights off. When she had placed the money on the table, the intruder crawled into the darkened room on his hands and knees, obtained the money, camera and camera case, and left the apartment. On direct examination, the complaining witness stated that she had an opportunity to see the facial characteristics of the intruder as he stood in the doorway. On cross-examination, she stated that she had obtained a glimpse of the intruder, and in response to a question by the judge, she stated that she had "a few seconds" to observe the intruder. She stated that she had given no estimate as to the intruder's weight in her description to the police, and denied that she had told the police that her assailant was six feet tall. In response to another question by the judge, the complaining witness conceded that it would have been impossible for her to see the intruder's feet as he stood in the doorway.

The trial judge found that the pre-trial confrontation procedures employed by the police were improper, and suppressed the pre-trial identifications which had taken place at the police station and at Boys' Court. The court, however, refused to suppress the in-court testimony of the complaining witness.

At trial, the complaining witness, the only occurrence witness to the crime, again identified defendant as the perpetrator of the crime. Officer John Moore of the Chicago Police Department testified at trial that shortly after the crime the complaining witness gave him a description of the robber and told him that the robber was six feet tall. Officer Moore also testified that no physical evidence was recovered on the person of the defendant. No physical evidence was introduced at trial.

Defendant testified at trial and denied committing the crime in question. He stated that he was on his way to get cigarettes at the time he was arrested. He also testified that he was 5'9" tall.

Defendant argues that the methods used by the police to obtain the identification of defendant were unnecessarily suggestive, thus constituting a denial of due process of law; and that as a result, the in-court identification was so highly prejudicial as to deprive defendant of a fair trial.

■■ In *Stovall v. Denno*, 388 U.S. 293, the Supreme Court ruled that confrontations for the purpose of identification may be so unnecessarily suggestive and conducive to irreparable mistaken identification that the accused is denied due process of law. Where a defendant has presented sufficient evidence to establish the unfairness of a pre-trial confrontation, an in-court identification may be admitted into evidence only if it is

shown that it had an independent origin arising from the witness' uninfluenced observation of the accused. (*People v. Blumenshine,* 42 Ill.2d 508, 250 N.E.2d 152.) The State must prove the uninfluenced origin of the in-court identification by clear and convincing evidence. *People v. Holmes,* 6 Ill.App.3d 254, 285 N.E.2d 561.

■■ In the instant case, the trial court correctly suppressed the pre-trial identification as being unduly suggestive. Under the circumstances, their unfairness is apparent. However, the State did not show by clear and convincing evidence that the in-court identification had an independent origin arising from the witness' uninfluenced observation of the defendant. Consequently, the trial court erred in permitting the in-court testimony of the complaining witness.

■■■ The complaining witness had a minimal opportunity to observe her intruder. She was awakened in her apartment at 1:00 in the morning after she had been asleep for about one hour. When she awoke, she turned on the light next to her bed and saw a man standing in the doorway. The intruder immediately stepped back into the hall and told the witness to turn out the light. This was the only occasion the witness had to view her intruder. Although she testified that she had an opportunity to view the intruder's facial characteristics, she also conceded that she only had a glimpse of him for a few seconds. We find that this opportunity was not sufficient to establish that the in-court identification by the complaining witness was based on an observation independent of and uninfluenced by two unnecessarily suggestive pre-trial confrontations. The prior confrontations were unreasonably suggestive and could only serve to instill the image of defendant in the witness' mind as the person who committed the crime. Since the identification of the complaining witness was the only evidence linking the defendant to the crime, the conviction must be reversed. See *People v. Magadanz,* 126 Ill.App.2d 335, 261 N.E.2d 703.

In view of our holding on the constitutional claim, it is unnecessary to consider defendant's contention that his identification by the complaining witness was insufficient to prove him guilty beyond a reasonable doubt.

For the reasons stated, the judgment of the circuit court is reversed.

Judgment reversed.

DEMPSEY, P. J., and McGLOON, J., concur.