THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PATRICK J. LAWLESS, Defendant-Appellant.

(No. 12237; 

Fourth District—August 14, 1975.

*Rehearing denied September 29, 1975.*

John F. McNichols and J. Daniel Stewart, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (James W. Jerz and Robert L. Berkover, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his conviction by jury verdict of armed robbery and a sentence of 15 to 30 years.

Upon appeal it is urged that the court erred in refusing to suppress identification testimony at trial which followed an unnecessarily suggestive pretrial lineup, and that the sentence is excessive.

Two armed men robbed the Kroger store at about 9 p.m. on April 28, 1972. Four employees were present and at trial testified to the occurrence: Coyne, aged 16 years, a utility clerk, Clark, the store manager and two women checkers, Kidd and Curtis. Coyne, who was placing bottles in a storage shed, first saw two men drive up and park an automobile. He noticed the conduct because it was an inconvenient place for customers to park and because the men wore coats and gloves, although it was a

warm evening. These men observed Coyne watching them and they compelled him to accompany them into the store. Clark and Curtis were working in a partitioned space which served as an office. The upper portion was not enclosed. Kidd was working at one of the check-out registers adjacent. During the robbery, the several witnesses were at varying distances of 15 to 3 feet from the defendant, who approached the office space and required Clark to terminate a telephone conversation and to put currency into a pillow case. The defendant argued with Clark who refused to put in some of the money. The second man stood at the door and at the time of trial had not been apprehended.

The store was brightly lighted and the transaction was said to have continued for about 3 minutes, although one witness thought the period was 5 minutes. The witnesses each gave a description which agreed that defendant wore dark rimmed glasses and had reddish hair with a mustache and goatee. Estimates of his height and weight varied from 5 feet 10 inches to 6 feet, and from 160 pounds to 180 pounds. No description of clothing was given other than an army type coat. A day or so after the robbery, Coyne examined two police mug books and a collection of some 25 photographs. He identified defendant from one of the latter.

In the early morning of May 3, 1972, defendant was arrested with a stolen automobile. At 10 a.m. that date, a lineup of six men was held at the police station and each of the store employees was present and observed the men in the lineup walk and turn as directed. This procedure continued for several minutes. There was no conversation between the witnesses during the lineup, and each thereafter separately identified the defendant. It is not contended that the police made any suggestion to any witness as to the identity of the defendant prior to the viewing. At the time of the lineup the defendant did not have a goatee and he was not wearing the glasses.

The photograph of the lineup shows that defendant and another man wore "T" shirts, two men wore short-sleeved sport shirts and one man wore a dark shirt with long sleeves. One man was shorter than defendant, two men were within an inch of his height and one man was taller. There was no remarkable difference in build.

We note that there is no requirement that the witnesses to a crime must make a pretrial identification of the defendant. *People v. Boney*, 28 Ill.2d 505, 192 N.E.2d 920; *People v. Mitchell*, 128 Ill.App.2d 90, 262 N.E.2d 798.

Defendant believes that the police should have been required to find five other red-headed, freckled-faced men for the lineup. In *People v. Bey*, 42 Ill.2d 139, 246 N.E.2d 287, the defendant had pronounced lumps on his head; in *People v. Sanders*, 5 Ill.App.3d 89, 282 N.E.2d 742, the

defendant had distinguishing scars on the face. Defendant's argument would require the police officers to seek out and produce five men of comparable age and size who possessed the noticeable, if not unusual, qualities of an accused such as having the particular fingers of one hand missing or other unique scars or facial characteristics. This would seem unreasonable as it would require a central casting system and talent production beyond the resources of most communities. The photograph of the lineup shows that the police did not isolate defendant in terms of race, stature or clothing.

■■ A long review of the merits of the argument is unnecessary for the record clearly shows an independent origin of the identifications by the witnesses which will support their in-court testimony. (*People v. Connolly*, 55 Ill.2d 421, 303 N.E.2d 409; *People v. Bey*, 51 Ill.2d 262, 281 N.E.2d 638.) The store had bright fluorescent lights, the witnesses had several minutes of observation in close proximity. There was no marked variation in the description given by the witnesses, and the respective identifications were made immediately on view and without hesitation. There was no significant lapse of time between the robbery and the identifications at the lineup. No witness made any erroneous identification and it is not contended that the witnesses collaborated or assisted one another in picking the defendant. These are the factors required to establish an independent origin as stated in *United States v. Wade*, 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926.

This case is clearly distinguishable from *People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152, where the defendant was observed in poor light; from *People v. Calhoun*, 11 Ill.App.3d 600, 297 N.E.2d 304, where the witness saw the defendant for but an instant and could give no description, and from *People v. Lee*, 54 Ill.2d 111, 295 N.E.2d 449, where several witnesses were unable to identify the defendant and the identifying witness had observed the defendant under circumstances equivalent to a showup.

The defendant introduced testimony desiring to show an alibi. His sister and brother-in-law testified that defendant was in their home from 7 p.m. until 10 p.m. on the date of the robbery. The credibility of such witnesses was a matter for the jury.

At the sentence hearing, the prosecution presented no evidence in aggravation, although in colloquy the State's Attorney spoke of the fact that defendant was on probation following a conviction of theft over $150. The State's Attorney recommended a sentence of 8 to 20 years because of the dangerous use of a weapon. The defense offered in mitigation the testimony of a man who had not seen defendant in 9 years.

■■ In *People v. Dandridge*, 9 Ill.App.3d 174, 292 N.E.2d 51, the court reduced to a minimum of 10 years a sentence of 14 to 28 years for armed

robbery. The circumstances of the offense in that case were more aggravated than in this. If the defendant, by good conduct can meet the available tests of rehabilitation under a minimum term of 10 years, such sentence is an acceptable response to the offense in evidence here. Pursuant to the authority of Supreme Court Rule 615(b)(1), the maximum sentence is affirmed, but the minimum sentence is reduced to 10 years. As modified, the judgment is affirmed, and the cause is remanded to the circuit court with directions to issue a modified mittimus.

Affirmed in part, modified in part and remanded with directions.

SIMKINS, P. J., and CRAVEN, J., concur.