THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MAURICE JACKSON, Defendant-Appellant.

First District (3rd Division)   No. 76-1142

Opinion filed January 18, 1978.

James J. Doherty, Public Defender, of Chicago (Andrea D. Lyon, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Myra J. Brown, and Armand J. Andry, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Maurice Jackson and two others were indicted on three counts of armed robbery in violation of section 18—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 18—2). Jackson was tried separately by a jury.

Prior to the trial, the defendant presented a motion to suppress the pretrial and possible in-court identification testimony of complainants, Margaret Spiller, Roland Brown and Joanna Straight, as well as of the eyewitness Fred Spiller. The court denied the motion and held that each of the potential witnesses had ample opportunity to observe the offenders

and that allegedly suggestive pretrial procedures did not taint their ability to testify at the trial. See *People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378; *People v. Martin* (1970), 47 Ill. 2d 331, 265 N.E.2d 685, *cert. denied* (1971), 403 U.S. 921, 29 L. Ed. 2d 700, 91 S. Ct. 2240.

Following the close of the State's evidence, Jackson moved for a directed verdict of not guilty with respect to the counts of the indictment charging the armed robbery of Margaret Spiller and Joanna Straight. The court granted the motion as to the Straight count, but denied it as to the Spiller count. No evidence was presented by the defendant. The jury returned guilty verdicts on the remaining two counts and the court entered judgment on these verdicts. Jackson was sentenced to the custody of the Department of Corrections for concurrent terms of 15 to 45 years. Following the denial of a motion for a new trial, the defendant brought this appeal.

The armed robberies took place on September 22, 1972, at Lea-Pett Restaurant and Lounge located on the northwest side of Chicago. Three men entered the restaurant sometime after 10:30 a.m. One of the men sat in a booth while the other two went to the bar; later all three were sitting in the booth. About 15 minutes passed before the robbery was announced. Patrons and employees of the restaurant were lined up at gun-point, relieved of their valuables and directed into the washroom, the cooler, or the storage room, so that they could not be seen by anyone passing the restaurant.

Roland Brown, a Chicago police officer, was off duty and present in the restaurant throughout the robberies. He testified that he was playing pool when the three men entered and that he observed each of them. He further testified that when the hold-up was announced, one of the men, whom he identified as Jackson, placed a gun to his head and said, "[t]his is a stick up, you're a police officer, give your gun up." Brown related that the defendant made several statements which indicated that he wanted to kill Brown, and that the other two men persuaded Jackson not to do so.

Fred Spiller entered the establishment as the robberies were in progress. He testified that he was met inside the door by a man who put a gun to his head. This man ordered Spiller into the cooler. Spiller identified the man as Maurice Jackson.

Calvin Barrett was also present in the restaurant when the robberies were announced. His testimony confirmed Officer Brown's statement of Jackson's threats. He further testified that Jackson pointed his gun at Barrett's head and forced him to place his money and other items into a plastic bag. Barrett also stated that the defendant ordered him into the men's washroom and later into a storage room. Another eyewitness, Cecil Lofton, related the threats made against Brown's life. He also testified that

he was directed to place his money into a plastic bag, forced into the storage room and told to kneel down. Subsequently he was struck on the head by Maurice Jackson.

Margaret, the wife of Fred Spiller, testified that while working at Lea-Pett on September 22, she noticed three new customers sitting in a booth in the lounge section of the restaurant. One of the men was the defendant. Mrs. Spiller collected money for some liquor ordered by one of the three. When she returned with the change she found only one man still sitting in the booth; she left the change on the table and returned to the kitchen. About 15 minutes later Jackson went into the kitchen with the bartender and announced the holdup to Mrs. Spiller. Mrs. Spiller testified that she was forced behind the counter and later directed to hand over the money from the cash register behind the bar. She placed the money in a green plastic bag and was led into the cooler. Mrs. Spiller testified that $2500 was taken from the restaurant in the robberies.

Joanna Straight, another eyewitness, was an employee of Lea-Pett at the time of the robberies. She was unable to identify the defendant as one of the offenders at the trial. There were discrepancies between Officer Brown and some of the other witnesses concerning whether Jackson had a moustache, a moustache and a beard, or any facial hair. Other differences existed with respect to where the victims were placed following the announcement of the robberies. Also in dispute was whether Jackson wore a hat and whether Officer Brown was serving drinks at the bar.

The defendant presents two issues for review; (1) whether the evidence was sufficient to prove Jackson guilty of armed robbery beyond a reasonable doubt, and (2) whether Jackson was denied a fair trial by the State's closing arguments to the jury.

The first issue does not seek to reverse the trial court's ruling denying the motion to suppress the identification testimony. Nevertheless, Jackson maintains that the identification evidence is insufficient to sustain the convictions when viewed in the light of the pretrial identification procedures. He suggests that the failure to conduct a lineup, the unnecessarily suggestive photographic identifications made by Brown and Mrs. Spiller, and the "show up" preliminary hearing identifications made by Brown and both Spillers, combine to create a reasonable doubt that he was properly identified as a participant in the armed robberies.

■■ We note that there is no legal requirement which mandates a lineup or any other pretrial identification procedure. (*People v. Mitchell* (1970), 128 Ill. App. 2d 90, 262 N.E.2d 798, *cert. denied* (1971), 402 U.S. 1010, 29 L. Ed. 2d 432, 91 S. Ct. 2194.) While a lineup may be preferred over other forms of pretrial identification procedures, it cannot be said that the other forms are always necessarily suggestive. We concur with the trial court's analysis of the photographic identifications made by

Brown and Mrs. Spiller. These photo identifications were made within a relatively short period after the offenses. Moreover, each of the two witnesses made an independent selection of Jackson's photo without the aid or influence of anyone, and these selections were made from among a group of several photographs. Finally, even if the identifications made at the preliminary hearing are properly characterized as unnecessarily suggestive, there remain the facts that the court found sufficient independent grounds to permit the trial testimony identifying Jackson as one of the robbers (*People v. Camel* (1974), 59 Ill. 2d 422, 322 N.E.2d 36; *People v. Martin* (1970), 47 Ill. 2d 331, 265 N.E.2d 685, *cert. denied* (1971), 403 U.S. 921, 29 L. Ed. 2d 700, 91 S. Ct. 2240) and that the identifications of Jackson made by Barrett and Lofton were not challenged as being influenced by the pretrial procedures. See *People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378.

■■ Jackson also points to the inability of one of the eyewitnesses to identify him and the discrepancies among the witnesses as bearing on the reasonable doubt issue. However, these matters, even when combined with the pretrial identifications, are not enough to take from the jury the issue of the weight and credibility to be assigned to the testimony of the five eyewitnesses who did identify Jackson. *People v. Catlett; People v. Thomas* (1970), 127 Ill. App. 2d 444, 262 N.E.2d 495.

Jackson's complaint concerning the closing argument of the prosecution initially concerns repeated references to the uncontradicted nature of the State's evidence. It is argued that these references were a disguised means of allowing the State to comment on the failure of the defendant to testify. (See *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229; Annot., 14 A.L.R.3d 723 (1967).) Illinois law permits a prosecutor to comment upon the uncontradicted nature of the evidence when arguing to a jury; such comment is permitted even when the defendant is the only person able to contradict the evidence. (*People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630; *People v. Palmer* (1970), 47 Ill. 2d 289, 265 N.E.2d 627, *cert. denied* (1971), 402 U.S. 931, 28 L. Ed. 2d 866, 91 S. Ct. 1532; *People v. Curtis* (1977), 48 Ill. App. 3d 375, 362 N.E.2d 1319.) Unless calculated to draw attention to the defendant's election not to testify, commentary on the uncontradicted nature of the evidence is a proper adversary tactic. *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.

■■ There were several references to the uncontradicted nature of the State's evidence made during the closing argument. Some of these references were made after the court had sustained objections to prior reference to the uncontradicted evidence. However, nothing indicates that there was a calculated effort to suggest to the jury the defendant's failure to testify; rather, the prosecutor stayed within the bounds of

1064

permissible comment by characterization of the evidence presented and by not referring to the defendant's trial tactics or neglected opportunity to reply to the State's presentation of the facts.

■■ Finally, Jackson argues that the prosecution's argument was prejudicial in that it erroneously commented upon Jackson's face as that of an armed robber, and upon the jury's duty to protect society from the conduct of Maurice Jackson. In view of the evidence identifying the defendant as one of the participants in the armed robberies at the Lea-Pett Restaurant and Lounge, the State was entitled to denounce his conduct and to encourage the fearless administration of the law by the jurors. (See *People v. Anderson* (1971), 48 Ill. 2d 488, 272 N.E.2d 18; *People v. Trimble* (1975), 27 Ill. App. 3d 353, 326 N.E.2d 437.) Nothing in the record before us indicates that the State exceeded this entitlement in arguing for the guilt and conviction of Maurice Jackson.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

McNAMARA and SIMON, JJ., concur.