THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KEVIN PATTERSON, Defendant-Appellant.

First District (2nd Division)    No. 79-604

Opinion filed September 2, 1980.

James J. Doherty, Public Defender, of Chicago (Thomas W. Murphy, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Bruce Rose, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Defendant, Kevin Patterson, was charged by indictment with the armed robberies of Leroy Newman and Forrest Williams in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). Defendant's motion to suppress certain identification testimony was denied and after a jury trial defendant was found guilty as charged. The court entered judgment on each verdict and sentenced defendant to two concurrent terms of 18 years. Defendant appeals and we consider the following issues: (1) whether the admission of defendant's prior conviction for the purpose of impeachment was improper; (2) whether the prosecutor improperly commented upon defendant's failure to call certain witnesses; (3) whether the trial court improperly limited the scope of defense counsel's cross-examination of a certain witness; (4) whether the trial court erred in denying defendant's motion to suppress certain in-court identification testimony; and (5) whether the State failed to comply with Supreme Court Rule 412 (Ill. Rev. Stat. 1973, ch. 110A, par. 412).

For reasons hereinafter set forth, we affirm the judgment of the circuit court of Cook County.

On March 11, 1975, at approximately 9:10 p.m., two men brandishing shotguns and one man brandishing a .45-caliber pistol entered the Rothchild Liquor Store. Four Rothchild employees, Meyer Spivak, Jerry Carmen, Jessie Thompson and Donald White, were searched for weapons by the brigands and then instructed to empty their pockets. Two store patrons, Leroy Newman and Forrest Williams, off-duty Chicago police officers, were also searched and were relieved of their service revolvers and police badges. Officer Williams' revolver was a chrome-plated .38-caliber detective special with the name "V. Paresi" engraved upon it, and his badge number was 9963. Officer Newman's badge number was 10599.

Approximately 10 minutes after the employees and several patrons were locked in the store's beer cooler by the offenders, one of the captive patrons forced open the locked cooler door. Spivak, the store manager, upon discovering that approximately $1200 had been taken from one of the safes, called the police to report the robbery. All the patrons, with the exception of Officers Newman and Williams, fled the scene before their

identities could be ascertained and before police investigators arrived. Employees Carmen, Spivak and Thompson gave statements concerning the robbery to the police investigators,[1] and Officer Newman gave a description of the offenders to police investigators.[2]

On March 20, 1975, nine days after the robbery heretofore described, at approximately 10:45 p.m., police officer John Thulis and his partner responded to a radio call reporting two men with guns at 8011 South May. The officers spoke briefly with the complainant and then began their search for two men with guns. Officer Thulis located defendant in a cul-de-sac behind the complainant's apartment building. In one hand defendant held a nickel-plated revolver and in the other hand an object later identified as several .38-caliber cartridges. Both hands were above defendant's head as he reached to place the revolver and cartridges on a window ledge. Officer Thulis arrested defendant and recovered from the window ledge a revolver upon which the name "Virgil Paresi" was engraved and several .38-caliber cartridges. A search of defendant revealed a walkie-talkie, a brown holster and a Chicago Police Department badge, No. 9963, attached to the inside of defendant's wallet.[3]

Officer William Bosak, who also had responded to the radio call, proceeded to the rear of the building, heard footsteps ascending the backstairs and followed. On the second-floor landing, Bosak apprehended John McTush who was carrying a walkie-talkie and a .45 automatic pistol which he threw onto the roof of an adjoining building. Officer Bosak arrested McTush and retrieved the pistol.[4] A search of McTush revealed a wallet-type object containing a Chicago Police Department badge, No. 10599, and identification belonging to Officer Newman.[5]

As a result of the arrests of defendant and McTush, Officers Newman and Williams viewed a lineup at which time both officers identified defendant and McTush as two of the three men who had perpetrated the Rothchild Liquor Store robbery.

Defendant testified that he had not been a participant in the Rothchild Liquor Store robbery on March 11, 1975, and that "he thought he had been set up" by the complainants on March 20, 1975. In addition, defendant denied that he had in his possession a gun and a wallet when he was apprehended. Because defendant does not on appeal contend that he was not proved guilty beyond a reasonable doubt, it is unnecessary to examine in detail his version of the events surrounding his arrest on March 20, 1975.

---

[1] Employee White did not speak with police investigators.

[2] Officer Williams did not give a description of the offenders to police investigators.

[3] The badge and revolver were those taken from Officer Williams on March 11, 1975, during the Rothchild Liquor Store robbery.

[4] The pistol was fully loaded and its serial number had been obliterated.

[5] The badge was that taken from Officer Newman on March 11, 1975, during the Rothchild Liquor Store robbery.

## I.

Defendant contends that the admission of defendant's prior conviction for aggravated battery for purposes of impeachment was improper. During cross-examination of defendant the following colloquy occurred without objection by defense counsel:

"Q. Mr. Patterson, you testified that back—when you were convicted of armed robbery you testified to?

A. January 12, 1970.

Q. And that's not the only felony you have been convicted of, is it?

A. I was convicted of an aggravated battery.

Q. When was that?

A. In 1968. '69, to be exact. I was arrested for it in 1968."

Defendant argues that only prior convictions for "infamous crimes" may be used to impeach or discredit, and that the crime of aggravated battery is not an infamous crime.

■■ This issue is governed by the rule enunciated in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, and enlarged upon in *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805, and in *People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563. In *Montgomery* our supreme court adopted proposed Federal Rule of Evidence 609, which states, insofar as is pertinent to this case:

"(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice."

(*Montgomery*, at 516; *Spates*, at 200; *Knowles*, at 588.) The court is to determine whether the crime falls within the purview of proposed Rule 609(a)(1) or (2), that is, whether the crime is either one punishable by death or imprisonment in excess of one year, or is a crime involving dishonesty or false statement (*Spates*, at 200); and then whether the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice. *Knowles*, at 591; *Montgomery*, at 517.

■■ Since the crime at issue in the instant case is aggravated battery, punishable by imprisonment for one to 10 years (Ill. Rev. Stat. 1967, ch. 38, par. 12—4), evidence of the conviction would be admissible under proposed Rule 609(a)(1). "No longer is a distinction made between infamous crimes and misdemeanors for impeachment purposes in crimi-

nal cases. Any prior conviction, so long as it comports with paragraph (a) as well as with the other provisions set out in *Montgomery* [citation] may be introduced." *Knowles*, at 588.

■■■ The discretionary nature of proposed Rule 609 remains inviolate. (*Spates*, at 204; *Knowles*, at 591; *Montgomery*, at 517-18.) It is the province of the trial court to weigh the probative value of a conviction for aggravated battery against the potential for unfair prejudice which might result. In exercising its discretion the trial court should consider the following factors: the nature of the crime, nearness or remoteness, the subsequent career of the defendant, and whether the crime was similar to the one charged. We observe that defendant neither filed a motion in limine to exclude evidence of his prior conviction for aggravated battery, nor objected at trial when the State inquired as to his prior conviction. Defendant first raised this issue in his post-trial motion for a new trial.[6] We have considered the foregoing factors in relation to the instant case and upon a careful review of the record conclude that defendant was not unduly prejudiced or deprived of a fair trial because evidence of his prior conviction for aggravated battery was admitted.

## II.

Defendant contends that the prosecutor improperly commented upon defendant's failure to call certain witnesses.

### A.

Defendant argues that questions and comments by the prosecutor pointing out defendant's failure to call John McTush as a witness constitutes reversible error. During cross-examination of defendant the following colloquy occurred:

"[State's Attorney]: Where is Mr. McTush now?

THE WITNESS: He's in the Illinois State Penitentiary.

Q. And your attorneys sent him back there, is that correct?

A. Yes, they did.

Q. They decided not to use him?

[Defense Counsel]: Objection. Why don't you use him?

THE COURT: Objection is sustained. The jury is instructed to disregard remarks of both counsel. You may ask your next question."

During closing remarks the prosecutor commented that although defendant subpoenaed McTush from the penitentiary, he was not called as a witness.

---

[6] On the day of the sentencing hearing defendant presented to the trial court a written motion for a new trial. At the request of defense counsel, the trial court permitted him to "highlight certain areas" of the motion. Defense counsel, however, did not avail himself of this opportunity to "highlight" or comment upon this issue.

■■ Generally, it is improper for a prosecutor to comment upon a defendant's failure to call a witness where the comment suggests that the witness would have testified unfavorably to the defendant, and the witness is as accessible to the State as he would be to the defendant. (*People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 123, 390 N.E.2d 1339.) When the existence of such a potential witness is elicited from defendant on cross-examination, the responsibility for the failure of the defendant to produce such witness cannot be assessed against the defendant or have the same significance as when the defendant himself refers to such potential witness in an apparent attempt to bolster his defense. (*Olejniczak*, at 123.) To conclude otherwise would make it too easy for the prosecutor to circumvent the rule against commenting upon defendant's failure to produce witnesses. *Olejniczak*, at 123.

■■ The questions and the comments by the prosecutor concerning defendant's failure to call John McTush as a witness, although improper, were harmless error. (See *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857; *Olejniczak*, at 123.) In the instant case the trial judge sustained objections to the questions and comments and instructed the jury to disregard the remarks of counsel. The trial judge also instructed the jury that the arguments of counsel should not be considered as evidence. This reduced the chance that the comment would have any prejudicial effect on defendants right to a fair trial. Moreover, the evidence that defendant was guilty of armed robbery was so strong that any error would not, in our opinion, have contributed to defendant's conviction. In addition, the jury was well aware from Officers Newman's and Williams' testimony that McTush had been one of the participants in the Rothchild robbery; and the jury was further aware from defendant's testimony that McTush was arrested with him on March 20, 1975. Therefore, it is reasonable to assume that even if the prosecutor had not engaged in the above questioning or made the above comments, the jury may have drawn an inference negative to defendant from his failure to call McTush as a witness.

## B.

■■■ Defendant also argues that the prosecution improperly commented upon defendant's failure to call Rothchild employees Jessie Thompson and Jerry Carmen. During closing argument defense counsel commented that Rothchild employees Spivak, Carmen and Thompson had the opportunity to view defendant longer than Officers Newman and Williams, yet only Spivak was called as a witness and he was not able to identify defendant. Defense counsel also pointed out that the State did not call as witnesses any of the complainants of the March 20, 1975, incident. In rebuttal the prosecutor responded without objection from defense counsel that defendant could have subpoenaed employee Thompson or any other person. It is obvious that the prosecutor's comments were in

response to arguments made previously by defense counsel. Defendant may not complain of improper comment where defendant's attorney has provoked such comment by his own argument unless the prosecutor's argument is so prejudicial as to have deprived defendant of a fair trial. (*People v. Bolton* (1976), 35 Ill. App. 3d 965, 343 N.E.2d 190.) We cannot conclude that the prosecutor's comment was so prejudicial as to deprive defendant of a fair trial.

### III.

Defendant contends that the trial court improperly limited the scope of defense counsel's cross-examination of Meyer Spivak by refusing to permit defense counsel to question whether Spivak had been able to identify defendant from a photograph shown to Spivak by defense counsel prior to trial. Spivak's testimony on behalf of the State pertained only to the "layout" of the store and the events of the robbery and its aftermath. Except for a general description of the offenders designating one as a tall black man and the other as a short black man, which enabled Spivak to convey which actions were performed by which offender, there is no testimony relating to the identity of the offenders.

■■ A defendant is entitled to cross-examine a witness as to any matter which tends to explain, modify or discredit his testimony or which tends to show that his testimony might be affected by interest, bias or motive to testify falsely. (*People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708.) Because Spivak did not testify on direct examination concerning the identification of defendant, there was no testimony concerning defendant's identification to explain, modify or discredit on cross-examination. Thus such cross-examination was beyond the scope of direct examination and properly limited by the trial court.

■■ Even if the trial court had properly limited cross-examination, such limitation would not require reversal. Improper limitation of cross-examination by defendant warrants reversal only where there has been a clear abuse of discretion and a showing of manifest prejudice to defendant. (*People v. Gallo* (1973), 54 Ill. 2d 343, 297 N.E.2d 569.) Any error in restricting the cross-examination of a witness whose testimony serves merely to buttress the prosecution, or on whose credibility alone the prosecution does not rest, may be deemed harmless. (*People v. Boyce* (1977), 51 Ill. App. 3d 549, 366 N.E.2d 914.) In the case at bar the testimony of Spivak was not crucial or essential to the prosecution nor relevant to the identification of defendant as one of the offenders. The testimony of Officers Newman and Williams was sufficient to support defendant's conviction. In addition, Spivak was subsequently called to testify on behalf of defendant and at that time was unable to identify defendant in a photograph of a lineup in which defendant had participated.

## IV.

■■ ■ Defendant contends that the trial court erred in denying his motion to suppress the in-court identification testimony of Donald White because that identification testimony was inherently suggestive and without an independent basis. In support of his contention defendant points out that he "was the only black male on trial," and that Donald White "had not viewed a lineup nor viewed photographs of any suspects involved in the armed robbery between March 21, 1975 and the date of his testimony over three years later." The fact that defendant was the only black male at counsel's table when he was identified in court as the offender does not render Donald White's identification inadmissible. (*In re Johnson* (1976), 43 Ill. App. 3d 549, 551, 357 N.E.2d 587.) The prosecution is not required to fill the courtroom with individuals who resemble the defendant in order to insure a proper identification. (*People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) Furthermore, there is no requirement that a witness to a crime make a pretrial identification of the accused. (*People v. Lawless* (1975), 31 Ill. App. 3d 650, 651, 334 N.E.2d 292.) The time lapse between the commission of a crime and the later identification of a defendant is a factor which affects only the weight to be given the identification, not its admissibility. *People v. Rodgers* (1972), 53 Ill. 2d 207, 214, 290 N.E.2d 251.

Defendant also asserts that "the State or its agents had informed [Donald White] of a description of [defendant] before he testified." This assertion is not supported by the record. During an *in camera* examination of Donald White he testified, under oath, that Jerry Carmen, a Rothchild employee, had informed him that "the tall fellow with the afro and the mustache" was on trial for the Rothchild Liquor Store robbery. Donald White further testified, in response to questioning by defense counsel, that the description of defendant and the fact that defendant was on trial had not been brought to his attention by the assistant State's attorneys.[7]

Donald White's testimony indicates that at the time of the robbery he had an opportunity to view defendant for 15 to 20 minutes in a brightly lit store. (See *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) Thus we cannot conclude that the in-court identification was inherently suggestive and without an independent basis. In addition, we observe that the lineup and in-court identifications of defendant by Officers Newman and Williams were sufficient to support defendant's conviction.

## V.

■■ Defendant contends that the State failed to disclose, as mandated by Supreme Court Rule 412(a)(ii) (Ill. Rev. Stat. 1975, ch. 110A, par. 412), the

---

[7] It should be noted that during this *in camera* examination the State suggested to defense counsel that White be shown a lineup. Defense counsel ignored this suggestion.

existence of statements made by defendant to his parole officer and the existence of the transcript of defendant's parole revocation hearing. During cross-examination of defendant the State sought to impeach a portion of his testimony by the use of a transcript of his parole revocation hearing. Defense counsel then requested a sidebar during which the following colloquy occurred:

[Defense Counsel]: "I'm withdrawing my objection now that I have had an opportunity to read it. When he was asking the question in court I had no idea—

THE COURT: You are not now objecting to them using this document, is that correct?

[Defense Counsel]: That's correct.

THE COURT: All right. It's all settled."

We conclude that defendant waived any objection he may have had to the use of the transcript of defendant's parole revocation hearing.

However, we note that the purpose of Rule 412 is to prevent surprise and unfairness to the accused. (*People v. Donald* (1977), 56 Ill. App. 3d 538, 543, 371 N.E.2d 1101.) Where a defendant has in fact had access to statements sought prior to trial, it has been held that there was sufficient compliance with Rule 412. (*Donald*, at 543.) In the case at bar defense counsel was present at the parole revocation hearing. We cannot conclude that there was surprise or prejudice to defendant which would require reversal. In so concluding, however, we do not suggest that the State's method of compliance with discovery is faultless.

Based upon the foregoing we affirm the judgment of the circuit court of Cook County.

Affirmed.

STAMOS and DOWNING, JJ., concur.