THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERNEST ROBINSON, Defendant-Appellant.

First District (3rd Division)    No. 76-1681

Opinion filed July 19, 1978.

Pritzker and Glass, Ltd., of Chicago (Michael L. Pritzker, David M. Schneider, Charles K. Piet, and R. Brent Daniel, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Ernest Robinson, was charged with two counts of armed robbery. A jury found him guilty of those crimes and the court sentenced him to three to nine years. On appeal defendant contends that the trial

court erred in denying his pretrial motion to suppress the identification testimony of two eyewitnesses, and that the court erred in denying his motion to suppress certain evidence seized in a search incident to his arrest.

On June 11, 1971, a wholesale grocer outlet in Chicago was robbed by several armed men. On June 25, 1971, another of the same company's outlets was robbed by armed men. (In these proceedings, we are concerned only with the robbery of June 11.) At trial, three witnesses, Larry Walsh, Socorro Gutierrez, and John O'Brien, identified defendant as one of the robbers in the June 11 occurrence. Witnesses at the second robbery informed police that a dark blue Mustang automobile was involved, and gave a partial license plate description. This information led police to defendant's residence approximately five hours after the June 25 robbery.

Defendant initially contends that the pretrial lineup identifications were so unnecessarily suggestive that the trial identification testimony should have been suppressed.

At the hearing on the motion to suppress that testimony, Larry Walsh testified that he first viewed a lineup at the police station at 8 p.m. on June 25, 1971. Walsh had been asked by the police to view some suspects. Three other employees of the grocer outlet also were present. Walsh viewed a lineup of four men. Each witness was asked individually if he recognized any of the four men. Walsh identified defendant, five feet one inch in height, as one of the robbers. The other men in the lineup ranged in height from five feet ten inches to six feet four inches. Walsh also identified one of the other men in the lineup as a participant in the robbery.

The following morning Walsh attended another lineup at the police station. He identified the same two men. He further testified that the police officers did nothing at either lineup to influence his identifications.

Walsh testified that on June 11 at a distance of about 15 feet he observed defendant for about ten seconds when the latter entered the store and talked with one of the cashiers. Walsh testified that he saw defendant reenter the store about ten minutes later as a participant in the robbery.

Socorro Gutierrez attended only the first lineup conducted on the evening of June 25, 1971. She testified that she individually viewed the lineup of four men. She was asked by the police if she recognized anyone, and she identified defendant and one other man.

On June 11, 1971, the day of the robbery, Gutierrez observed defendant when he first entered the store for four minutes at a distance of three feet. The lighting was bright. She then had a conversation with

defendant concerning the purchase of cigarettes for another three minutes. When defendant returned to the store several minutes later, the witness recognized him as the same man who just left the store.

Officer Richard Riccio of the Chicago Police Department testified that he conducted the lineup on the evening of June 25. The witnesses were brought in individually to view the lineup of four men. Defendant was approximately five feet tall, and the other three men were five feet ten or eleven inches.

Officer Robert Cozzi of the Chicago Police Department conducted the lineup on the morning of June 26. Seven men were in the lineup. Cozzi stated that at the time of the lineup there were no men in custody as short in stature as defendant.

Defendant testified at the hearing that he was placed in a lineup with eight or nine other persons on the evening of June 25. There were persons who were close to his height and size in the lockup, but the police did not use them in the lineup. Defendant further testified that he heard Riccio say: "Isn't that the guy? You said you needed a short guy, it was a short guy?"

The trial court denied the motion to suppress the identification testimony. At the time of the ruling, the trial judge stated it would be unreasonable to impose an obligation on the police in preparing a lineup to find persons as short as defendant.

■■ We agree with the trial court that the lineup was not unnecessarily suggestive. (See *People v. Lawless* (1975), 31 Ill. App. 3d 650, 334 N.E.2d 292.) We think that the judge correctly observed it would be unreasonable under these circumstances to expect the police to place another person as short as defendant in a lineup. More importantly, we hold that even if the lineups had been suggestive, the identification testimony was properly admitted since there was an independent origin for the identifications. Where a pretrial identification confrontation is held to be suggestive, an in-court identification may be admissible if it is shown by clear and convincing evidence that the courtroom identification had an independent origin arising from an earlier uninfluenced observation of the defendant. *People v. Blumenshine* (1969), 42 Ill. 2d 508, 250 N.E.2d 152; *People v. Ganter* (1977), 56 Ill. App. 3d 316, 371 N.E.2d 1072.

In the present case, the eyewitnesses' opportunities to observe defendant at the time of the robbery provided them with a source for their identifications independent of the lineups. Walsh and Gutierrez saw defendant twice on the day of the robbery. They observed him when he entered the store to make a purchase and again several minutes later when he returned as one of the robbers. Ms. Gutierrez testified that she observed defendant for a total of seven minutes during his first visit,

during which time she talked to him for about three minutes. The trial court properly denied defendant's motion to suppress the identification testimony.

Defendant next contends that the trial court erred in denying his motion to suppress certain evidence seized in a search incident to his arrest.

The second robbery occurred on June 25, 1971, at about 11:30 a.m. Officers Richard Riccio and William Kasinak of the Chicago Police Department were immediately assigned to investigate the crime. The officers were informed that a very short man, described as a "midget", took part in the robbery. Witnesses also told the police that a dark blue Mustang automobile was involved, and that the first part of the license plate was PA 24—. The officers discovered that a blue Mustang with license plate PA 2441 was registered in defendant's name. Defendant's address was listed as 2716 East 76th Street in Chicago. At approximately 4 p.m. on the same day, the two officers, accompanied by Officer Mucia, drove to the above location but found there was no such address. They proceeded to 2716 East 76th Place. There, they spoke to another tenant who told them that defendant, an extremely short man, lived on the first floor.

As they spoke to the tenant, the officers heard an automobile door close. They looked out a window and observed defendant, five feet tall, walking from a blue Mustang automobile into his apartment. He was carrying a vinyl or leather black or blue bag. Riccio and Mucia ran to the rear door of the first floor apartment. They knocked on the door and announced their office. Although they heard voices in the apartment, no one answered. The officers broke the rear door down and, as they entered, defendant's wife ran and locked herself in the bathroom. As Mucia attempted to apprehend the woman Riccio held a gun on defendant and let Kasinak in the front door. Kasinak began searching for other offenders. Kasinak opened a closet door and retrieved the black bag which defendant had been carrying. The bag was six to eight feet from where defendant was standing. Kasinak emptied the bag in the presence of defendant and his wife. The bag contained guns and food stamps; defendant sought to suppress the weapons.

At the hearing, defendant and his wife testified that they arrived home together. They heard some men at the back door and, as Mrs. Robinson approached it, the officers broke the door down and arrested the couple. The officers then took them to the police station. Defendant and his wife also stated that the officers did not find a bag in the apartment and did not take anything from the apartment. When Mrs. Robinson returned from the police station, the apartment was torn apart.

Defendant contends his arrest was unlawful and without probable cause.

A peace officer may arrest a person when he has reasonable grounds to believe that the person is committing or has committed an offense. (Ill. Rev. Stat. 1975, ch. 38, par. 107—2(c).) The officers need have only a reasonable belief that an offense has been committed and that defendant committed it. *People v. Garcia* (1975), 27 Ill. App. 3d 396, 326 N.E.2d 497.

In the present case, the officers knew that an extremely short man had been one of the participants in an armed robbery; that a blue Mustang with a certain license plate number was involved; that defendant, a very short man, owned such a vehicle; and that just a few hours after the crime the officers had seen defendant emerge from a blue Mustang and enter his apartment. The police had reasonable grounds to believe that defendant had committed an armed robbery.

■■■ Defendant argues, however, that it was unlawful for the police to arrest him in his apartment without an arrest warrant. Where a statute authorizes arrest upon probable cause, an arrest is not invalid because of a failure to obtain an arrest warrant. (*People v. Denwidde* (1977), 50 Ill. App. 3d 184, 365 N.E.2d 978; Ill. Rev. Stat. 1975, ch. 38, par. 107—2(c).) Moreover, the forcible entry was justified. All necessary and reasonable force may be used to effect an entry into any building or part thereof to make an authorized arrest. (*People v. Johnson* (1970), 45 Ill. 2d 283, 259 N.E.2d 57.) In *Denwidde* this court upheld forced entry after the police knocked at the door repeatedly and the building manager's attempt to open the door failed. Officer Riccio's use of force in entering the apartment after receiving no response to his knock and the announcement of his office was proper. Also see *People v. Sprovieri* (1969), 43 Ill. 2d 223, 252 N.E.2d 531.

Defendant finally urges that even if his arrest was proper the resulting search was illegal. One of the officers, while searching the apartment, opened a closet door approximately six to eight feet from where defendant was standing. The officers observed the bag which they had seen defendant carry into the apartment. The officers emptied the bag and discovered the guns which defendant sought to suppress.

In *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, the United States Supreme Court limited the extent of a permissible search to the immediate area within defendant's control. The court noted, however, that a gun in a drawer in front of an accused can be as dangerous as one concealed in the accused's clothing. In *United States v. Wysocki* (5th Cir. 1972), 457 F.2d 1155, the court upheld the search of a box inside a bag in a closet six feet away from the defendant who was seated in a chair and was guarded by another police officer. In *United States v. Patterson* (10th Cir. 1971), 447 F.2d 424, the search of a kitchen shelf four to six feet away from defendant was upheld although five police officers were present to guard defendant.

In *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681, *cert. denied*, 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506, the court upheld the search of a dog food bag seven to ten feet away from defendant. In so holding, the court noted the *Wysocki* and *Patterson* cases and stated at page 246:

"These cases make it clear, we think, that there can be no hard and fast rule defining the permissible scope of a warrantless search incident to an arrest. Certainly an arbitrary limitation to a certain number of feet would be unsatisfactory. Whether the search is reasonable must depend on the particular facts of the case. Among the factors to be considered in this case are the knowledge that the suspect was armed, the presence of another person who might attempt to assist the suspect, the accessibility of the searched area, and the physical control of the situation exercised by the police."

■■ In the present case, the search was reasonable. There was the possibility of other suspects in the apartment. Defendant's wife was present. The police had knowledge of the armed robbery and possessed a reasonable belief that defendant was armed. The closet was only six to eight feet away from defendant; and the search was contemporaneous with defendant's arrest.

A case cited by defendant in support of his contention that an item in exclusive control of the police must not be searched without a warrant, *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, is clearly distinguishable from the present case. There, the police seized a locked footlocker and searched it later at the police station. The arrest was in a public place; no exigent circumstances existed; and the search was not contemporaneous with the arrest.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SIMON and McGILLICUDDY, JJ., concur.