THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* DAVID A. ROSA, Defendant-Appellee.

First District (5th Division)    No. 79-1220

Opinion filed March 6, 1981.

James J. Doherty, Public Defender, of Chicago (Richard S. Schiffrin and Matthew J. Beemsterboer, Assistant Public Defenders, of counsel), for the People.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Alexander Vroustouris, Assistant State's Attorneys, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was convicted of murder and armed robbery and sentenced to a term of 50 to 100 years. On appeal, he contends that his motion to suppress identification was erroneously denied; that his guilt was not proved beyond a reasonable doubt; and that his written exculpatory statement was improperly introduced as rebuttal evidence.

It appears that during an armed robbery of the Rip-Tide Lounge,

$250 in cash was taken from the owner-bartender (Marie Wuczynski) and a patron was killed.

A hearing on defendant's motion to suppress identification was conducted prior to trial at which Edwin Torres testified that he appeared in a police lineup with defendant which was first viewed by a man and a woman and then by "a chubby, blond" Polish lady, none of whom made an identification although police officers showed pictures to the Polish lady three times during the lineup. On cross-examination, he stated that he had known defendant for four or five years, during which he had worked and socialized with him, and that they were members of the same organization. Marie Wuczynski (the Polish lady) testified that after the robbery she examined two books of photographs and six, seven, or eight loose photos at the police station looking for a man with "sort of bushy hair"; that from this array of photographs, she selected one picture which resembled defendant but did not make a positive identification at that time; that the next morning she was the first of three people to view a police lineup, and she made a positive identification of defendant; and that she did not have a photograph with her during this proceeding. Officer Cagney testified that he conducted the lineup which was viewed by three persons; that Marie Wuczynski, the first person to view the lineup, identified defendant and, although she had looked at photographs the day before, he did not show her any photos immediately prior to, during, or after the lineup. Following arguments of counsel, defendant's motion to suppress identification was denied.

At trial, Christopher Flowers (a State witness) testified that on April 24, 1977, he was in an automobile with defendant and an individual called "Bandit"; that at about 3 a.m. defendant and Bandit left the car near the intersection of Armitage[1] and Hermitage, stating they were going to use the washroom of a nearby tavern; and that he then heard firecracker-like sounds, after which defendant and Bandit "got out of the tavern and came back in the car." On cross-examination, the witness admitted previously telling defense counsel and an investigator that on April 24 he and defendant went to the lake, proceeded to Old Town, went by a "Liquor place," and then stopped at Armitage and Hermitage but not at a tavern; that he had been "doing some drugs" on that day, and on the next day he was taken to the police station where he was questioned for about 15 hours—during which time a police officer was "stepping on his shoes"; that he gave officers a statement at that time; and that five days later, a pending juvenile charge against him was dropped.

Marie Wuczynski testified that on April 24, at approximately 3 a.m., she was tending bar at the Rip-Tide Lounge, at 1745 West Armitage; that the lounge is always bright and well lit with lights right next to the cash

---

[1] Hermitage Avenue intersects Armitage at 1734 west.

register; that while facing the cash register she heard shots, turned around, and saw a man standing approximately five feet away pointing a gun at her and another man with a gun standing at the front door, about 15 feet away; that the closer man (whom she identified in court as defendant) stood about 6 feet tall, wore a moustache, had hair on his chin and wild black hair, weighed about 165 pounds, and appeared to be 28 to 30 years old; that the other armed man stood about 5 feet 3 inches tall, weighed about 135 pounds and appeared to be 25 or 26 years old; that defendant told her to "give me the money" and she gave him $250 cash; that after defendant and the other man left she saw Paul Ernie, who had been sitting on a bar stool when defendant entered the lounge, lying on the floor; and that the entire incident lasted about five minutes.

The parties stipulated that Paul Ernie died of a bullet wound and that there were eight bullet wounds in his body.

Christopher Flowers' mother testified for the defense that on April 26, when Christopher returned home from the police station, he told her that the police were investigating a shooting which he knew nothing about because he was asleep in the car; and in October 1978, she was present when defense counsel asked her son whether defendant and Bandit had stopped at a tavern on April 24 to use the bathroom, and her son replied, "[T]hey wouldn't have to stop in no tavern to use the bathroom. If they wanted to use the bathroom, they'd just get out there behind the car and use it." She also stated that her son takes drugs, drinks a lot, and lies; that she cannot keep things of value in the house because he steals them; and that after Christopher talked to assistant State's Attorneys the week prior to trial, he told her they wanted him to say things he did not know.

Officer LaRosa, called by the defense, testified that on April 24 he responded to a robbery in progress at the Rip-Tide Lounge; that Marie Wuczynski described one of the offenders as a black-haired male Latino, appearing to be 25 to 30 years old, standing about 5 feet 10 inches tall, weighing approximately 155 pounds, and wearing a moustache; that although his police report indicated that this offender had an Afro style hairdo, he acknowledged that this may have been his interpretation of curly hair; that he did not recall whether Wuczynski mentioned anything about the offender having had a goatee; and that Wuczynski described the other offender, who stood by the door, as standing 5 feet 6 inches tall, appearing to be 23 to 26 years old, and weighing about 135 to 140 pounds.

David Garcia, also known as "Bandit" (a defense witness), testified that on April 24 defendant, Christopher Flowers, he, and others drove to the lake and then to Old Town where everyone left the car except Flowers who was asleep in the back seat; that after he and defendant returned to the car, he drove defendant and Flowers to their respective homes; that he did not stop at the Rip-Tide Lounge or anywhere else that

night; and that on April 24, he stood 6 feet tall, was 18 years old, and weighed 210 pounds. On cross-examination, Garcia said that he and defendant arrived at the lake at about midnight; that he first saw defendant that evening at about 11 p.m.; and that he does not know where the Tropical Magic Lounge is and no one from the group he was with went there on the night in question.

It is undisputed that at the time of defendant's arrest he did not have an Afro hairdo, and that he was 20 years old, stood 6 feet 1 inch tall, weighed 140 pounds, and wore a moustache and goatee.

OPINION

Defendant first contends that his identification should have been suppressed, as it was the product of unnecessary suggestion.

The determination as to whether a pretrial confrontation in a specific instance is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the accused] was denied due process * * * depends on the totality of the circumstances surrounding it" (*Stovall v. Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206 S. Ct. 1967, 1972), and defendant bears the burden of proving that such a confrontation resulted in a denial of due process (*People v. McMath* (1970), 45 Ill. 2d 33, 256 N.E.2d 835, *cert. denied* (1970), 400 U.S. 846, 27 L. Ed. 2d 83, 91 S. Ct. 92; *People v. Madden* (1977), 52 Ill. App. 3d 951, 368 N.E.2d 384). In order to sustain this burden, the totality of the circumstances must not only demonstrate suggestiveness (*Stovall v. Denno*; *People v. Lee* (1969), 44 Ill. 2d 161, 254 N.E.2d 469), but also show a substantial likelihood of misidentification (*Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375; *People v. Santiago* (1977), 53 Ill. App. 3d 964, 369 N.E.2d 125).

■■ Defendant initially maintains that Wuczynski's lineup identification was "necessarily and fatally tainted" by her prior selection of a photograph which resembled the man who robbed her tavern. It appears that on the morning of the robbery the witness viewed two large photo books as well as six, seven, or eight loose photographs from which she selected one which looked like the offender. She did not make a positive identification at that time, but the next day she identified defendant at a lineup. There is no indication, however, in the record—nor does defendant argue—that this viewing procedure was in any way suggestive, and we do not believe that the inability of Wuczynski to positively identify defendant from the photographs suggests in itself that her lineup identification was tainted. *Cf. People v. Soto* (1975), 35 Ill. App. 3d 166, 341 N.E.2d 107.

■■ Defendant also argues that suggestiveness was established in the testimony of Torres, a participant in the lineup, that Wuczynski could not make a positive identification of defendant at the lineup and that she was shown photographs by the police while she was viewing the lineup.

However, the pretrial hearing testimony of Wuczynski and the officer who conducted the lineup contradicts that of Torres. Both Wuczynski and the officer stated that she identified defendant at the lineup; that she did not have a photograph with her when she viewed the lineup; and that none was shown to her immediately prior to, during, or after the lineup. In the light of Torres' testimony that he had known and socialized with defendant for four or five years and that they belonged to the same organization, it appears that the court was justified in accepting the State's evidence over that of Torres. In any event, where the evidence is in conflict, a reviewing court will not substitute its judgment for that of the trier of fact. *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Kirk* (1979), 76 Ill. App. 3d 459, 394 N.E.2d 1212, *cert. denied* (1980), ___ U.S. ___, 65 L. Ed. 2d 1119, 100 S. Ct. 3019.

■■ Additionally, defendant urges that the pretrial identification procedure was unduly suggestive because Wuczynski indicated to the police that the offender had a moustache, and defendant and only one of the four other men in the lineup wore moustaches. We note, however, that the photographs of defendant's lineup included in the record depict two individuals with moustaches other than defendant. Moreover, this court in *People v. Robinson* (1978), 62 Ill. App. 3d 900, 379 N.E.2d 1264, held that a police lineup was not unnecessarily suggestive even though witnesses described the offender as being very short and defendant, who stood 5 feet 1 inch tall, participated in a lineup with others whose heights ranged from 5 feet 10 inches to 6 feet 4 inches. The lineup in the instant case was much less implicative. Considering the totality of the circumstances here, we conclude that the identification was not unduly suggestive.

■■■ In any event, evidence of an unnecessarily suggestive identification may be admissible at trial if it is reliable (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243; *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513), which is dependent upon evaluation of the following factors:

> "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and length of time between the crime and the confrontation." (*Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382; see also *People v. McKinley* (1977), 69 Ill. 2d 145, 370 N.E.2d 1040, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1623.)

Considering the first of these factors, we note that the record discloses that the complaining witness had ample opportunity to view defendant at the time of the crime. Wuczynski testified that the tavern was always

bright and well lit; that there are lights next to the cash register; that when she observed defendant he was standing five feet away from her; and that she saw his face, as is evidenced by the fact that she observed a moustache. As to the second factor, complainant's testimony established that she maintained a high degree of attention, as demonstrated by the fact that defendant talked to her during the 5-minute occurrence. With respect to the third factor, defendant argues that complainant's description of the offender did not match his because at the time of the arrest he was 20 years old, weighed 140 pounds, stood 6 feet 1 inch tall, wore a moustache and goatee, and did not wear his hair in an Afro style. Officer LaRosa testified that the complaining witness described the offender as a male Latino, 25 to 30 years old, standing 5 feet 10 inches tall, weighing 155 pounds, having black hair, and wearing a moustache; and that according to his police report, complainant stated that defendant wore his hair in an Afro. While it is true that complainant misjudged defendant's age by five years, from our examination of the lineup photographs we believe that her estimate was not unreasonable. As to the discrepancies in the witness' description of defendant's physique (3 inches in height and 15 pounds in weight), we note that "precise accuracy in description of the offender by an identifying witness is not a necessity." (*People v. Ramsey* (1979), 77 Ill. App. 3d 294, 298, 395 N.E.2d 973, 976; *People v. Pickens* (1978), 63 Ill. App. 3d 857, 863, 380 N.E.2d 868, 872.) Although the police report stated that defendant's hair was worn in an Afro, Officer LaRosa acknowledged that this description could have been his own interpretation of curly hair. In addition, it is unclear from the record whether Wuczynski actually failed to mention defendant's goatee because Officer LaRosa testified that he did not recall whether complainant even mentioned anything about the offender having a goatee. Thus, it appears that Wuczynski's prior description of defendant was reasonably accurate. Concerning the fourth factor, complainant testified that she "was sure" of her identification of defendant. In regard to the fifth factor, it is undisputed that the complaining witness viewed the lineup within 24 hours of the occurrence of the crime. Therefore, our evaluation of the *Neil v. Biggers* criteria establishes that the pretrial identification was reliable.

Defendant also contends that his guilt beyond a reasonable doubt was not established because first, the complaining witness did not adequately identify him; and second, the testimony of the other State's witness is in conflict with that of complainant. It is established, however, that the positive and credible testimony of a single occurrence witness is sufficient to support a conviction (*People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819); that in a bench trial the credibility of witnesses and the weight to be afforded their testimony is determined by the trial court,

whose judgment will not be set aside unless the proof is so unsatisfactory as to create a reasonable doubt of guilt (*People v. Herron* (1979), 76 Ill. App. 3d 437, 395 N.E.2d 169); and that any discrepancies or conflicts in the testimony affect only the weight to be given the testimony, and the trier of fact is free to accept or reject as much or as little as it pleases of a witness' testimony (*People v. Beasley* (1977), 54 Ill. App. 3d 109, 369 N.E.2d 260).

■■ Having concluded above that the identification of defendant by the complaining witness was reliable, we reject the first of the two reasonable doubt arguments. As to the conflict between Wuczynski's and Flowers' testimony, we believe that Wuczynski's testimony alone establishes defendant's guilt. At trial, she gave what appears to be positive and credible testimony that while tending bar in the Rip-Tide Lounge, she heard shots; that she turned around and observed an armed man at the front door and defendant pointing a gun at her; that defendant demanded money and she complied with his order; and that a patron, who had been sitting on a stool before defendant entered the tavern, was lying on the floor when defendant left. The parties stipulated that this patron was killed by a bullet wound. This testimony was corroborated in part by Flowers' testimony which placed defendant at the scene of the occurrence. While Flowers' testimony that defendant entered the tavern with Garcia (who stands 6 feet tall and weighs 210 pounds) cannot be reconciled with Wuczynski's testimony that the offender accompanying defendant stood 5 feet 3 inches tall and weighed 135 pounds, the trial court was free to reject the conflicting testimony of Flowers—especially in view of other testimony as to his prior inconsistent statements; his mother's testimony that he steals, drinks a lot, takes drugs, and lies; and his own testimony that he was "doing some drugs" the evening in question.

Defendant also contends he was prejudiced by the introduction, in rebuttal, of his written statement. Over objection, the statement was received in evidence as purported contradiction of defense witness Garcia. No question as to foundation is raised, and it is the position of defendant that the statement was improperly admitted because any contradiction of Garcia concerned only collateral or immaterial matter.

Rebuttal evidence is proper where it contradicts or disproves evidence of defendant (*People v. Sepka* (1977), 51 Ill. App. 3d 244, 367 N.E.2d 138), and while it should not be admitted to contradict defense testimony as to collateral or immaterial matter (*People v. McGhee* (1974), 20 Ill. App. 3d 915, 314 N.E.2d 313), reversal is not warranted where no prejudice results (*People v. Dennis* (1970), 47 Ill. 2d 120, 265 N.E.2d 385, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2212).

■■ The statement involved here contradicts the testimony of defense

witness Garcia in several respects. Garcia testified that he first saw defendant on the evening in question at 11 p.m. and that they and others in their group arrived at the beach about midnight, where they drank beer and then went to Old Town—following which he drove defendant and Flowers to their homes. He also said that he did not know the location of the Tropical Magic Lounge and that no one from their group went to that lounge. Defendant's statement indicates that he met Garcia about 12:15 a.m.; they they reached the lake about 2 a.m.; and that on the way Garcia had stopped at the Tropical Magic Lounge where he got two six-packs of beer which they drank at the lake, leaving there about 3 a.m. The contradictions of Garcia set forth above went to his credibility and, while they may have concerned matter collateral to the substantive issues of the case, defendant does not argue and we do not find that he was prejudiced therefrom.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.