**UNITED STATES of America ex rel. David ROSA, Petitioner,**

v.

**Michael NEAL, Respondent.**

**No. 88 C 3426.**

United States District Court, N.D. Illinois, E.D.

Dec. 13, 1988.

Thomas S. Moore, Chicago, Ill., for petitioner.

William P. Pistorius, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

David Rosa ("Rosa") initially filed a pro se in forma pauperis petition against Danville Correctional Center Warden Michael Neal ("Neal"), seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Section 2254"). After this Court appointed counsel to represent Rosa,[1] respondent Neal answered the petition and moved for summary judgment under Fed.R.Civ.P. ("Rule") 56, made applicable to this proceeding by Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"). For the reasons stated in this memorandum opinion and order, the motion is granted.

**1.** That appointment was made in accordance with this Court's practice of appointing lawyers for pro se prisoner litigants in virtually every instance in which the threshold legal hurdle of non-"frivolousness" is overcome.

**2.** This statement of facts is drawn from the Illinois Appellate Court's description of the evi-

### Facts [2]

In the early morning hours of April 24, 1977 two men entered the Rip Tide Lounge in Chicago. During the ensuing armed robbery, they took $250 in cash from owner-bartender Marie Wuczynski ("Wuczynski"), and a patron was killed after being shot eight times.

Wuczynski was able to view the robbers in the bright, well-lit tavern for about five minutes. One gunman (later identified as Rosa) was about 5 feet away, and the second was about 15 feet away. Shortly after the robbery the police arrived, and Officer LaRosa ("LaRosa") took Wuczynski's description of the first gunman as a male Latino, 25–30 years old, about 5 feet 10 inches to 6 feet tall and weighing 155 to 160 pounds, with a small mustache and an Afro. However, LaRosa later admitted the word "Afro" may have been his own interpretation: Wuczynski testified at trial that she said "short wild bushy" hair.

Less than two hours later Wuczynski looked at two books of photographs and some loose photos at the police station. She selected one photo that resembled Rosa, but she did not make a positive identification. That afternoon, however, she selected Rosa out of a lineup of five individuals.

It is undisputed that on the night of the robbery Rosa was out drinking with friends, among them David Garcia ("Garcia") and Christopher Flowers ("Flowers"). They drank beer at the Fullerton Street beach, then drove to Old Town, where the others left the car while Flowers slept in the back seat.

Garcia testified at trial that after leaving Old Town, he drove Rosa and Flowers right home without stopping anywhere else. But Flowers testified, in accordance with a police statement he made on April 25, that one stop *was* made about 3 a.m. near the

dence adduced at Rosa's bench trial. Given the nature of Rosa's claims, no evidentiary hearing is required here (see Section 2254 Rule 8(a)). When any date is given without specifying a year, it refers to 1977 (the year in which the crime at issue here was committed).

Rip Tide Lounge. Rosa and Garcia went into a tavern to use the washroom, then Flowers heard firecracker-like sounds, after which the two returned to the car, told Flowers to "lay back down" and took off.

On cross examination, though, Flowers admitted that he had previously told defense counsel that:

1. Although he, Garcia and Rosa did stop near the tavern that night, no one went in.

2. He was "doing some drugs" that day.

3. His statement to the police came after 15 hours of questioning and harassment.

4. Five days after he made the statement a pending juvenile charge against him was dropped.

Flowers' mother testified (a) he was a habitual liar, substance abuser and thief and (b) he told her on April 26 he knew nothing about any shooting, because on the night in question he was passed out in the back of the car.

As for the lineup identification, both Wuczynski and Officer Cagney (who conducted the lineup) testified that Wuczynski was the first of three persons to view the lineup, and she had no photographs in front of her at that time. Edwin Torres ("Torres"), who appeared in the lineup, testified that a "chubby, blond" Polish lady (Wuczynski) viewed the lineup *after* two people were unable to make an identification, and she was shown photographs during the viewing. Torres had been a friend of Rosa's for four or five years, and the two were members of the same social organization. It was undisputed that at the time of Rosa's arrest he did not have an Afro hairstyle—he was 20 years old, stood 6'1", weighed 140 pounds and wore a mustache and goatee.

Before Rosa's trial a motion to suppress the lineup identification was made and denied. Rosa was then convicted of murder and armed robbery and was sentenced to a term of 50 to 100 years on February 13, 1979. That judgment was affirmed by the Illinois Appellate Court (*People v. Rosa*, 93 Ill.App.3d 1010, 49 Ill.Dec. 480, 418 N.E.2d 124 (1st Dist.1981)), and the Illinois Supreme Court denied leave to appeal October 19, 1981 (*People v. Rosa*, No. 54880).

Rosa asserts three reasons for issuance of a writ of habeas corpus. They will be dealt with in turn.

### Reasonable Doubt

Rosa first claims he was not proved guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1978) (emphasis in original) teaches the standard for reviewing sufficiency of evidence under Section 2254 is "whether, after viewing evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Rosa's basic argument for relief on this ground is that there was conflicting testimony and the prosecution's witnesses were not credible. For instance, this opinion has already set out the disparity between Wuczynski's original description of the assailant and Rosa's appearance. But Wuczynski may not have described an Afro and may have noticed chin whiskers (93 Ill. App.3d at 1016, 49 Ill.Dec. at 485, 418 N.E.2d at 129). As the Appellate Court said, precise accuracy was not necessary and Wuczynski's identification was "reasonably accurate" (*id.*).

■ At bottom Rosa's argument "is the impermissible one that [the trial judge], despite having conducted a full, fair and adequate [trial], should have resolved the credibility issues posed by that [trial] differently" (*United States ex rel. Saucedo v. Lane*, 599 F.Supp. 337, 339 (N.D.Ill.1984)). This Court has consistently refused to undertake such a de novo determination (*id.*) where the presumption established by Section 2254(d) is applicable.

*Rosa*, 93 Ill.App.3d at 1017, 49 Ill.Dec. at 486, 418 N.E.2d at 130 found Wuczynski's identification of Rosa was reliable, and her testimony *alone* sufficed to establish Rosa's guilt. Certainly the trial judge was entitled to believe Wuczynski's identification and to discredit the testimony of Flow-

ers and Garcia. *Saucedo*, 599 F.Supp. at 340 teaches that "what is fully dispositive is that [the trial judge] could and did reasonably find as he did."

### In–Court Identification

Rosa next contends Wuczynski's in-court identification should have been suppressed. *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972–73, 18 L.Ed.2d 1199 (1967) conditions such suppression on a finding that a lineup was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [defendant] was deprived of due process of law." *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)) similarly puts the test in terms of whether there is "a very substantial likelihood of irreparable misidentification."

But both those statements tell us more about the end result—the legal conclusion—than how to get there. For that purpose *Neil, id.* 409 U.S. at 199–200, 93 S.Ct. at 382–383 (reaffirmed in *Manson v. Braithwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977)) teaches the reliability of the identification must be scrutinized under the "totality of the circumstances," including (as recently repeated in *Walton v. Lane*, 852 F.2d 268, 271 (7th Cir.1988)):

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

*Rosa*, 93 Ill.App.3d at 1015–16, 49 Ill. Dec. at 485, 418 N.E.2d at 129 clearly shows the Illinois Appellate Court evaluated the identification in those terms. Insofar as that decision resolved any *factual* disputes about the nature of the identification process, Section 2254(d) gives it a presumption of correctness (*Sumner v. Mata*, 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981)).

█ This Court is left to determine, then, whether the identification was unreliable as a matter of law so as to overcome any such presumption in the factual arena. But the *Walton*-confirmed test demonstrates the reliability of Wuczynski's identification with or without the benefit of any presumption:

1. She viewed Rosa for five minutes from five feet away in a bright, well-lit tavern. *Walton*, 852 F.2d at 273 acknowledges even a few *seconds* may suffice.

2. Rosa held a gun and talked to Wuczynski during that confrontation. That surely satisfies the attentiveness element of *Walton, id.*, which looks not only at the degree of attentiveness displayed but also at whether the witness took advantage of the opportunity to view (a consideration that may be measured by the witness' ability to provide a detailed description, *id.* at 274).

3. Wuczynski's identification was "reasonably accurate." *Walton, id.* requires no more—it need not be "exhaustive."

4. She "was sure" of her identification of Rosa from the minute she sat down at the line-up (R.R. Mem. 6–7 [3]).

5. She identified Rosa less than 24 hours after the crime. *Walton, id.* at 275 says time lapses of several weeks to months may not lessen reliability.

In summary, there were far more than the required indicia of reliability of the in-court identification. Its admission was entirely proper in constitutional terms.[4]

### Exculpatory Statement

Finally Rosa contends an exculpatory statement that he made to police the day after the crime was improperly admitted as

---

**3.** In citing Neal's memoranda this opinion uses "R." (for respondent). Of course the second "R." here stands for Neal's *Reply* Memorandum.

**4.** Indeed, the admissibility ruling was unexceptionable even in less demanding terms, as a matter of the conventional rules of evidence—the approach required to be taken by the Illinois Appellate Court.

rebuttal evidence in violation of his Fourth and Fifth Amendment rights.[5] Neither branch of that constitutional argument withstands analysis.

### 1. *Fourth Amendment*

■ Rosa claims the statement was obtained after he was confronted with items seized from his house in violation of his Fourth Amendment rights. After a hearing on that claim, the trial judge denied Rosa's motion to suppress the statement (R.R. Mem. 7).

It is true that the Illinois Appellate Court did not address that constitutional claim. However, it was clearly raised in both parties' briefs to that court and was thus not waived for habeas review (see this Court's opinion in *United States ex rel. Garner v. McEvers*, 690 F.Supp. 635, 637–38 (N.D.Ill. 1988)).

But Rosa still falls at the first hurdle here. *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976) teaches that a full and fair state court adjudication of a Fourth Amendment claim precludes federal habeas corpus relief on that ground. *Stone* applies to a habeas claim challenging an in-court identification that is the "fruit" of an illegal search or seizure (*United States ex rel. Moore v. Lane*, 612 F.2d 1046, 1047 (7th Cir.1980) (per curiam)) and to statements to the police that are "tainted" by an illegal arrest (*Agee v. White*, 809 F.2d 1487, 1490 (11th Cir.1987)). Rosa's Fourth Amendment claim is barred.

### 2. *Fifth Amendment*

■ Rosa, for the first time, argues his Fifth Amendment rights were violated by admitting the statement, because he chose

not to testify. Regardless of Rosa's failure to cite any case law in support of that position, this Court is bound to reject the claim as waived under *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam), by reason of Rosa's failure to have " 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." [6]

Nothing remotely resembling a Fifth Amendment claim was made in the state courts. That claim too is barred here.

### *Conclusion*

Rosa's first two claims are rejected on the merits. His third claim is also rejected, in part on the merits and in part as having been waived. Rosa's petition is dismissed with prejudice in accordance with Section 2254 Rule 8(a).

---

5. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provisions (which of course impose limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody the Bill of Rights guaranties).

6. Because the Fifth Amendment issue could have been raised in the trial court and on direct appeal, it was not an appropriate subject for

Rosa's invocation of the Illinois post-conviction remedy. That eliminates any problem of nonexhaustion of state remedies, which would have forced dismissal of Rosa's petition as "mixed" (see *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982)). In terms of waiver, however, Rosa has suggested nothing even approaching the necessary "cause and prejudice" showing (see *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 452 (7th Cir.1984)).